LACKEY *v.* STATE.

Oct. 6, 1952

No. 38445          2 Adv. S. 30          60 So. 2d 503

See Lackey v. State, 211 Miss. 892, 53 So. 2d 25.

*Ramon L. Burgess,* for appellant.

*J. T. Patterson,* Assistant Attorney General, for appellee, replied on the point as follows:

ALEXANDER, J.

This is the second appearance of this case. See 211 Miss. 892, 53 So. 2d 25. The testimony follows so closely that in the former case that it is unnecessary to set it out in detail.

The indictment was for murder. Death was caused by an unlawful operation for abortion. In our former opinion it was decided that death to a prospective mother, under the facts, justified submission only of the issue of manslaughter. Such was the verdict here.

The assignments argued are: (1) the giving of certain instructions for the State; (2) the introduction of a purported confession; (3) the admission of certain charts by a physician; and (4) that the verdict evinces passion and prejudice. We consider them in that order.

The first instruction for the State is as follows: "The Court instructs the Jury for the State that Manslaughter is the killing of a human being by the act, procurement or culpable negligence of another and without authority of law, and the court now charges the Jury for the State

that if you believe from the evidence in this case beyond a reasonable doubt that the defendant feloniously attempted to perform a felonious abortion upon Ava Lucille Vaiden, who was then and there pregnant with child, by feloniously forcing air into her private parts, and that the said Ava Lucille Vaiden died as a result thereof, then you will find the defendant guilty of manslaughter, regardless of whether Ava Lucille Vaiden consented thereto or not, and in such event the form of your verdict may be:

" 'We, the Jury, find the defendant guilty of Manslaughter.' "

Appellant insists that he is guilty of murder or of no crime, and that the only applicable statutes are Code 1942, Secs. 2215, 2222 and 2223. The first defines murder which we have held is not applicable under the facts here; the second deals with the killing of an unborn quick child by injuries to the mother; and the third defines abortion in which the death of such child is caused.

**(Hn 1)** The quoted instruction tracks the language of Sec. 2220, and against the contention that it does not define manslaughter, we are compelled to hold that it is correct. **(Hn 2)** The second instruction for the State is as follows: "The Court instructs the jury that they do not have to actually know that the defendant is guilty before they can convict him; but that it is only necessary that they should believe from the evidence in this case beyond a reasonable doubt that he is guilty; and if they do believe from all of the evidence in this case, beyond a reasonable doubt that the defendant is guilty, it is their sworn duty to find him guilty of Manslaughter."

This instruction does not undertake to define the crime but only the measure of jury persuasion. Standing alone it is an abstraction albeit correct. Taken with the first instruction, the jury were adequately informed both as to what facts were to be found and to what degree they must be persuaded.

(Hn 3) The alleged confession relates to the following statement of the sheriff which was in substance corroborated by the jailer: ''During the day Monday I was up in the jail and had occasion to talk to him (Lackey) and he said he would like to talk with me and I told him I would try to get you (the prosecuting attorney) down there, and I went back to the jail that night and told Bailey to go up and get Mr. Lackey and bring him to the office and I told him I had been unable to contact you that day and we sat there and talked a few minutes and he asked me what he was charged with and I told him I thought no formal charges had been made but from rumors I thought manslaughter and he asked what was the penalty for manslaughter and I told him I thought from five to fifteen years, and he said if he got five years at his age and condition of his health it would mean the same thing as life, and I told him the boy and girl had talked and if they stood by the same story they had told that it looked like they had him in a tight place and he said if they stood by their story looked like they had him caught and if he could get it down to one or two years he would make a clean breast of the thing.''

Upon a preliminary examination, in which appellant did not testify, it was shown that the statement was voluntarily made. Whether considered as an implied confession or as an admission, it was relevant and admissible. Certainly the impulse to make such assertions arose only from the reactions of the accused and while circumstantially relevant upon the issue of guilt were not explicit confessions.

(Hn 4) A properly qualified pathologist, introduced by the State, testified that shortly after death of the woman, an autopsy was performed by him, which disclosed that death had been caused by an air embolism. There were other indications consistent with the theory of the State that death had resulted almost immediately from the crude procedure employed by the appellant.

In order to explain the medical and anatomical terms used, the physician exhibited three large drawings showing the relative location of the several organs and illustrating his findings. It was testified that they were prepared by him from accredited medical textbooks and from his own knowledge both of the subject and of his actual examination of the physical facts disclosed by the autopsy. They appear to be drawn with care and skill and their accuracy is not questioned.

(Hn 5) The test as to the admissibility of such charts is their capacity to inform the jury, and where they are accurate and fully explained, are admissible even though abstract. Le Barron v. State, 107 Miss. 663; 20 Am. Jur., Evidence, Sec. 739; 32 C. J. S., Evidence, Sec. 730; Wigmore on Evidence, (3rd Ed.), Sec. 790; Underhill, Criminal Evidence, (3rd Ed.), Sec. 105; Wharton, Criminal Evidence, (11th Ed.), Sec. 980. There is no contention that the victim was other than physically normal. We find this assignment not well taken. (Hn 6) Nor was their introduction calculated to incite passion or prejudice.

Upon the whole record, we find no reversible error, and the jury were warranted in resolving the conflicting issues of fact.

Affirmed.

*Roberds, P. J.,* and *Kyle, Holmes* and *Ethridge, JJ.,* concur.